IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA R.,                              :
                                         :
                 Plaintiff,              :
                                         :
        v.                               :   Case No. 2:25-cv-00923
                                         :   Judge James L. Graham
                                         :   Magistrate Judge S. Courter M. Shimeall
                                         :
COMMISSIONER OF                          :
SOCIAL SECURITY,                         :
                                         :
                 Defendant.              :

REPORT AND RECOMMENDATION

Plaintiff, Melissa R., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

social security disability insurance benefits ("DIB").  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No.

13).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's

Statement of Errors and **AFFIRM** the Commissioner's decision.

I.      PROCEDURAL HISTORY

Plaintiff applied for DIB on August 11, 2021, alleging disability as of November 7, 2020,

due to Sjogren's disease, Autonomic Nervous System Disorder, unspecified autoimmune disease,

Hashimoto's Disease, osteoporosis, IBS-C, Paradoxical Vocal Cord Movement Disorder, Barrett's

Esophagus, Pituitary Adenoma, and Raynaud's Disease.  (ECF No. 8-5, PAGEID ##: 544–49; ECF

No. 8-6, PAGEID #: 590.)  Plaintiff's application was denied initially on December 3, 2021, and

1

upon reconsideration on February 1, 2022.  (ECF No. 8-3, PAGEID ##: 292, 302.)  Thereafter, Plaintiff appeared with counsel before an administrative law judge ("ALJ") on March 6, 2023. (ECF No. 8-2, PAGEID ##: 246–80.)  On April 7, 2023, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled from November 7, 2020, through February 28, 2022. (ECF No. 8-3, PAGEID ##: 313–38.)  Moreover, Plaintiff's period of disability ended due to substantial gainful activity from March 1, 2022, through December 31, 2022.  (*Id.*)  Plaintiff became disabled again on January 1, 2023, and has continued to be disabled since then.  (*Id.*)  The Appeals Council re-opened the ALJ Decision and remanded the matter for further proceedings.  (*Id.* at PAGEID ##: 340–47.)

The ALJ held a hearing on remand on November 20, 2024.  (*Id.* at PAGEID ##: 89–123.) On January 23, 2025, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled from November 7, 2020, through February 28, 2022, but that medical improvement occurred beginning on March 1, 2022.  (*Id.* at PAGEID ##: 42–88.)

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2028, and applied the five-step sequential process to evaluate her DIB application.[1]  (ECF No. 8-2, PAGEID ##: 46–48.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

- <u>Step One</u>: The ALJ found that Plaintiff did not engage in substantial gainful activity from November 7, 2020, through February 28, 2022, the period during which [Plaintiff] was disabled.  (*Id.* at PAGEID #: 49.)

- <u>Step Two</u>: From November 7, 2020, through February 28, 2022, the period during which Plaintiff was under a disability, Plaintiff had the following severe impairments: Adrenal Insufficiency/Addison's Disease; Sjogren's Disease, with neuropathy; Postural Orthostatic Tachycardia Syndrome (POTS); Dyspnea on Exertion; Raynaud's Syndrome; Wegner's Disease; Osteoporosis; Thyroid Disorder; Bilateral Lower Extremity Edema/Right Sided Sciatica; Sinus Headaches; and Major Depressive Disorder.  (*Id*. at PAGEID #: 50.)

- <u>Step Three</u>: From November 7, 2020, through February 28, 2022, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix11.  (*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that, from November 7, 2020 through February 28, 2022, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She had to avoid unprotected heights and hazardous machinery. [Plaintiff] had to avoid concentrated exposure to humidity, and extreme heat or cold. She was limited to simple routine tasks, and simple work-related decisions. She could tolerate few changes in a routine work setting. [Plaintiff] would have been off task for 20% of the workday, and absent three times per month. She had to elevate her legs to waist level for two hours per day.

(ECF No. 8-2, PAGEID #: 51.)

---

4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

- Step Four: From November 7, 2020, through February 28, 2022, Plaintiff was unable to perform any past relevant work.  (*Id.* at PAGEID #: 55.)

- Step Five: From November 7, 2020, through February 28, 2022, considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (*Id.* at PAGEID #: 56–57.)

The ALJ therefore concluded that Plaintiff was under a disability, as defined by the Social Security Act, from November 7, 2020, through February 28, 2022.  (*Id.* at PAGEID #: 57.)

The ALJ then determined Plaintiff's claim for the time period after March 1, 2022, and applied the eight-step sequential process to determine whether Plaintiff continued to be disabled through the date of the decision.[2]  Relevant here:

---

[2] Social Security Regulations require ALJs to determine whether a claimant continues to be disabled through an eight-step evaluation of the evidence.  *See* 20 C.F.R. § 404.1594(a).  If fully considered, the sequential evaluation considers and answers eight questions:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant's disability will be found to have ended.

2. If not, does the claimant have an impairment that alone or in combination meets or equals the severity of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1? If so, the claimant's disability will be found to continue.

3. If not, has there been medical improvement as shown by a decrease in medical severity? If not, the evaluation proceeds to step 5.

4. If there has been medical improvement, is it related to the ability of the claimant to do work? If not, the evaluation proceeds to step 5; if so, the evaluation proceeds to step 6.

5. This step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4. If no exceptions apply, the claimant's disability will be found to continue. If one of the first group of exceptions to medical improvement applies, the evaluation proceeds to step 6. If an exception from the second group applies, the claimant's disability will be found to have ended.

6. If medical improvement is shown, is the claimant's current impairment nonetheless severe? If not, the claimant's disability will be found to have ended.

- Step One: "Since March 1, 2022, [Plaintiff] engaged in substantial gainful activity during the following periods: March 1, 2022 through December 31, 2022 and during 2023." (*Id*. at PAGEID #: 58.) "However," the ALJ went on to note, "[s]ince March 1, 2022, there has been a continuous 12-month period[] during which [Plaintiff] did not engage in substantial gainful activity. The remaining findings address the period(s) [Plaintiff] did not engage in substantial gainful activity." (*Id.* at PAGEID #: 59.)

- Step Two: "[Plaintiff] has developed new impairments since March 1, 2022, the date [Plaintiff]'s disability ended. Thus, [Plaintiff]'s current severe impairments (listed below) differ from those present from November 7, 2020 through February 28, 2022." (*Id.* at PAGEID #: 59.) The ALJ further found: "[Plaintiff]'s severe impairments of record from March 1, 2022, through the date of this decision are as follows: inflammatory arthritis; Sjogren's syndrome; Reynaud's syndrome; peripheral neuropathy; postural orthostatic tachycardia syndrome (POTS); undifferentiated connective tissue disease; osteoporosis; complex regional pain syndrome in the left lower extremity; fracture to the right foot and right toes; right femur stress fracture with surgical repair; fracture to the left knee cap with surgical fixation; left ankle fracture; obesity; and a depressive disorder." (*Id.*) In addition, the ALJ explained that, "[b]eginning March 1, 2022, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at PAGEID #: 60.)

- Step Three: "Medical improvement occurred as of March 1, 2022, the date Plaintiff's disability ended (20 CFR 404.1594(b)(1))." (*Id.* at PAGEID #: 62.)

- Step Four: "The medical improvement that has occurred is related to the ability to work because there has been an increase in Plaintiff's residual functional capacity (20 CFR 404.1594(b)(4)(i))." (*Id.* at PAGEID #: 64.)

Although Plaintiff continued to have a severe impairment as of March 1, 2022, the ALJ

determined that she nonetheless had the following RFC:

---

7.  If the claimant's current impairment is severe, does the claimant nonetheless have the residual functional capacity to perform the claimant's past work? If so, the claimant's disability will be found to have ended.

8.  If the claimant is not able to perform his or her past work, can the claimant perform other work? If so, the claimant's disability will be found to have ended. If not, the claimant's disability will be found to continue.

*Johnson v. Sec'y of Health & Hum. Servs.*, 948 F.2d 989, 991 (6th Cir. 1991).

> [Plaintiff] has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] could occasionally operate foot controls. She could occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds. [Plaintiff] could occasionally stoop, kneel, crouch, and crawl. She could tolerate occasional exposure to extreme heat and cold. [Plaintiff] should avoid exposure to unprotected heights and should avoid exposure to machinery. [Plaintiff] could understand, remember, and carry out simple tasks and instructions without strict production quotas or fast paced work, such as on an assembly line.

(*Id.*)

Using this RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work but that she was still able to perform jobs that exist in significant numbers in the national economy.  (*Id.* at PAGEID #: 76–77.)  The ALJ therefore concluded that Plaintiff's disability ended March 1, 2022, and she has not become disabled again since that date.  (*Id.* at PAGEID #: 78.)  The Appeals Council denied Plaintiff's request for review on June 12, 2025.  (*Id.* at PAGEID ##: 28–34.)  This appeal followed.

## II.     RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the errors raised by Plaintiff.  Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

In her single assignment of error, Plaintiff contends that the ALJ erred in finding that she was engaged in substantial gainful activity from March 1, 2022, through December 31, 2022, and throughout 2023, and that this finding "tainted the ALJ's consideration of the medical record, resulting in an inaccurate residual functional capacity." (ECF No. 13, PAGEID ##: 3063–66.) In

other words, Plaintiff contends that the ALJ's finding that her medical impairments improved to the point that she can perform substantial gainful activity is invalid because, in her view, the ALJ erroneously determined that Plaintiff had previously returned to substantial gainful activity. For the reasons that follow, the Undersigned disagrees and concludes that substantial evidence supports the ALJ's determination.

As an initial matter, the Undersigned notes that the ALJ did not find that Plaintiff's disability ceased based solely on her earnings or work activity. The ALJ explained that "[s]ince March 1, 2022," when the ALJ found Plaintiff had returned to substantial gainful activity, "there has been a continuous 12-month period[] during which the claimant did not engage in substantial gainful activity"—and therefore, according to the ALJ, "[t]he remaining findings address the period(s) the claimant did not engage in substantial gainful activity." (ECF No. 8-2, PAGEID #: 59.) The ALJ then proceeded through the medical-improvement analysis and found that Plaintiff's disability ceased as of March 1, 2022, due to medical improvement related to her ability to work. (*See* ECF No. 8-2, PAGEID #: 58 (explaining that the ALJ's basis for finding Plaintiff not disabled "is upon medical improvement related to her ability to work and not the assessment of earnings or work activity").) In other words, although the ALJ found that Plaintiff returned to substantial gainful activity for a period of time in 2022 and 2023, the ALJ's ultimate conclusion that Plaintiff's disability had ceased was grounded in her medical improvement and resulting less restrictive RFC. (*See id.* at PAGEID ##: 62–77.) In reaching that conclusion, though the ALJ considered Plaintiff's ability to return to substantial gainful activity as evidence of Plaintiff's medical improvement

related to work, this fact was not dispositive of the ALJ's determination that she was no longer disabled.

Even assuming it was, the ALJ did not err in determining that Plaintiff had returned to substantial gainful activity from March 1 to December 31, 2022, and in 2023. As explained above, when the Social Security Administration conducts a continuing disability review for DIB, it uses an eight-step sequential analysis. *See* 20 C.F.R. § 404.1594. "Unlike the five-step analysis used to determine initial disability, the primary focus for a continuing review is on whether there has been medical improvement related to an individual's ability to perform work." *Thomas K. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3494, 2025 WL 2013619, at *3 (S.D. Ohio July 18, 2025). The first step asks: "Are you engaging in substantial gainful activity? If you are . . . we will find disability to have ended . . . ." 20 C.F.R. § 404.1594(f).

"At step one of the sequential evaluation of disability, a claimant has the burden of establishing that she is not engaged in substantial gainful activity." *Morgan v. Astrue*, No. 2:08-CV-1108, 2010 WL 547489, at *2 (S.D. Ohio Feb. 11, 2010) (citing 20 C.F.R. § 404.1520(b); *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987)). "Substantial work activity involves the performance of significant physical and mental activities; gainful work is the sort of activity usually performed for pay or profit regardless of whether or not profit is in fact realized." *Id.* (citing 20 C.F.R. § 404.1572(a), (b)). "Earnings above certain amounts give rise to a rebuttable presumption that an individual is engaged in substantial gainful activity." *Id.* at *2 (citing 20 C.F.R. § 404.1574(b)(2), Table 1).

"[W]hen work is done under special conditions, an ALJ 'may find that it does not show that you have the ability to do substantial gainful activity.'" *Hunt v. Comm'r of Soc. Sec.*, No. 1:25-CV-01022, 2026 WL 83959, at *5 (N.D. Ohio Jan. 12, 2026) (citing 20 C.F.R. § 404.1573(c)), *report and recommendation adopted*, No. 1:25-CV-1022, 2026 WL 613539 (N.D. Ohio Mar. 4, 2026). Under 20 C.F.R. § 404.1573(c), however, even work done in a sheltered environment may show a claimant possesses "the necessary skills and ability to work at the substantial gainful activity level." "If, however, a claimant's impairments prevent [her] from doing 'ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work,' it may be sufficient to show that the claimant is not working at the substantial gainful activity level." *Boyes v. Sec'y of Health & Hum. Servs*, 46 F.3d 510, 512 (6th Cir. 1994) (quoting 20 C.F.R. § 404.1573(b)). A plaintiff must offer "truly probative evidence" to rebut the presumption that her work constitutes substantial gainful activity. *Dinkel v. Sec'y of Health & Hum. Servs.*, 910 F.2d 315, 319 (6th Cir. 1990). "A general assertion that [p]laintiff's work was 'accommodated' does not suffice." *Blais v. Comm'r of Soc. Sec.*, No. 1:15-CV-0450, 2016 WL 1444348, at *7 (W.D. Mich. Apr. 13, 2016) (citation omitted).

Substantial evidence supports the ALJ's finding that Plaintiff engaged in substantial gainful activity from March 1 through December 31, 2022, and in 2023. The ALJ found that Plaintiff's earnings exceeded the Commissioner's substantial gainful activity threshold for that period. (ECF No. 8-2, PAGEID #: 58.) The ALJ acknowledged that Plaintiff testified that her work during this period was accommodated and provided an employer statement but ultimately found that Plaintiff failed to rebut the presumption of substantial gainful activity:

10

It should be noted the [Plaintiff] testified that her work when she returned to work [w]as accommodated as she was provided flexibility from her employer (Testimony). She noted that her work ceased only when the company she worked for[] faced buyout and her flexibility/accommodations were going to be removed (testimony). The [Plaintiff] submitted an employer statement (Exhibit 16E). The employer provided the [Plaintiff] with some work related enhancements to help facilitate her work experience (Exhibit 16E). The employer cited the [Plaintiff] was given a flexible work schedule, with flexibility in work hours; assistive technology/software; accessible communication; training and awareness including training to colleagues and managers to create an inclusive supportive work environment; and regular check ins to ensure the work accommodations were meeting her needs (Exhibit 16E). It should be noted the provided employer statement was largely generalized without specific notation of the [Plaintiff]'s exact accommodations and how such accommodations were different than those being provided to the [Plaintiff]'s peer employees. It should be noted the [Plaintiff] cited she was afforded flexibility, but flexibility such as being permitted days off was also provided for other employees, including employees who needed the flexibility for nondisability reasons such as need for childcare (testimony). The undersigned finds the generalized statement from her employer does not objectively support the work she performed during 2022 and 2023 was accommodated work in accordance with the Agency rules and regulations.

(*Id.* at PAGEID ##: 58–59.)

Plaintiff does not allege that her earnings fell below the substantial gainful activity threshold set by the Commissioner.  Rather, she contends that the evidence she provided established that her work was sufficiently accommodated to rebut the presumption of substantial gainful activity.  The Undersigned disagrees.

The employer statement Plaintiff provided outlined the following accommodations her employer "put in place to facilitate [her] work experience:"

1.. **Flexible Work Schedule:** We understand that your health and well-being may require flexibility in your work hours. We will work with you to establish a schedule that meets your needs while ensuring that your work duties are fulfilled.

11

3. **Assistive Technology:** If you require specific assistive technologies or software to perform your job effectively, please let us know, and we will make every effort to provide you with the necessary tools and training.

4. **Accessible Communication:** We are committed to ensuring that all internal communications, including company emails, documents, and meetings, are made accessible to you. If you have any preferences or requirements related to communication, please let us know so that we can accommodate your needs.

5.. **Training and Awareness:** We will provide training and resources to your colleagues and managers to raise awareness about the needs and challenges of employees with disabilities. This will create a more inclusive and supportive work environment for you and others.

6. **Regular Check-Ins:** We will schedule regular check-ins with you to ensure that the accommodations provided are meeting your needs. If adjustments or changes are required, we are committed to making those promptly.

(ECF No. 8-6, PAGEID #: 668.)

As the ALJ noted, Plaintiff's employer statement is "largely generalized without specific notation of [Plaintiff's] exact accommodations and how such accommodations were different than those being provided to the claimant's peer employees," and thus is insufficient to rebut the presumption of substantial gainful activity.  (ECF No. 8-2, PAGEID #: 59.)  The employer statement is forward-looking and describes accommodations the employer "will" put in place for Plaintiff, but it includes no details about whether and how such accommodations were actually implemented in Plaintiff's work.  When the ALJ noted the generic nature of Plaintiff's employer statement at the hearing, Plaintiff responded that she had provided her boss's phone number and that "he would tell [the ALJ] how it was."  (ECF No. 8-2, PAGEID #: 111.)  However, "it is plaintiff's burden at step one to rebut the presumption that she is engaged in substantial gainful

activity based on her earnings." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996) (citing *Dinkel*, 910 F.2d at 319).

Plaintiff's own testimony further fails to support her contention that her work was accommodated.  When the ALJ asked Plaintiff at the hearing if anyone else at her company was allowed to work from home, Plaintiff testified "Yes. . . . It was a remote job."  (ECF No. 8-2, PAGEID #: 112.)  Plaintiff further testified that her employer allowed another employee to miss "significant amounts of work" for childcare, indicating that flexibility was provided for reasons unrelated to disability.  (*Id.*)

In short, the ALJ's determination that Plaintiff engaged in substantial gainful activity from March 1 through December 31, 2022, and in 2023 reflects no error and is supported by substantial evidence.  *See, e.g.*, *Dinkel*, 910 F.2d at 319 (citing *Anderson v. Heckler*, 726 F.2d 455, 458 (8th Cir. 1984) (presumption not rebutted by plaintiff's testimony, when such was not substantiated by testimony of her employers)).

Having found that substantial evidence supports the ALJ's determination that Plaintiff engaged in substantial gainful activity, the Undersigned is not convinced by Plaintiff's argument that the ALJ's subsequent medical improvement analysis was "tainted" by that determination. Moreover, even if Plaintiff could show some error in ALJ's substantial gainful activity finding at step one, the ALJ's medical-improvement analysis independently supports the cessation of benefits.

"Medical improvement" is defined as "any decrease in the medical severity" of the claimant's impairments, and is based on "improvements in the symptoms, signs, and/or laboratory

findings associated with" the claimant's impairments.  20 C.F.R. § 404.1594(b)(1).  A finding of medical improvement will result in the termination of benefits if "it is also shown that [the claimant is] currently able to engage in substantial gainful activity."  *Id.* § 404.1594(b)(3).  That determination may be based on all of the claimant's current impairments, not just those present at the time of the most recent favorable determination.  *Id.* § 404.1594(b)(5).  Unless it is determined that the claimant remains disabled, the Commissioner "will use the new symptoms, signs and laboratory findings to make an objective assessment of [the claimant's] functional capacity to do basic work activities or residual functional capacity and . . . will consider [the claimant's] vocational factors."  *Id.*  There is "no presumption of continuing disability."  *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip*, 25 F.3d at 287).

Here, the ALJ explained that "[t]he objective evidence and documented medical improvement no longer objectively supports [that the Plaintiff] would need accommodations for off task behavior during the workday, absences from the workplace, or a need to elevate her legs to waist level for two hours per day."  (ECF No. 8-2, PAGEID #: 62.)  The ALJ relied in part on Plaintiff's prior employment to support the ALJ's finding that Plaintiff's medical conditions had improved to the point that she no longer required certain RFC limitations, noting that Plaintiff's "absences from work limitation is no longer objectively supported" because Plaintiff "remained gainfully employed, working in a position exceeding substantial gainful activity during this period of time" and "recurrent absences from the workplace were not objectively documented during this period of time by her employer."  (*Id.* at PAGEID #: 63.)  Further, the ALJ explained that "the employer provided statement within the record . . . did not support any significant specialized

accommodations for the [Plaintiff,] rather the employer confirmed receipt of generalized employer provided accommodation to all employees." (*Id.* at PAGEID ##: 63.)

Further, as Plaintiff acknowledges, the ALJ "discussed other evidence including [Plaintiff's] severe impairments" in determining that Plaintiff experienced medical improvement. (ECF No. 13, PAGEID #: 3063.)  The ALJ noted that the record "documents no recurrent lower extremity edema, pitting edema, or pervasive swelling, supporting any need for leg elevation." (ECF No. 8-2, PAGEID ##: 62.)   The ALJ further observed that Plaintiff "did not require any noted recovery periods due to medications/treatment," and that Plaintiff was "not noted or observed to be distractable during her treatment sessions, she did not exhibit aberrant behaviors or oddities in mannerisms, and there was no assessed cognitive or intellectual deficit during this period of time." (*Id.* at PAGEID ##: 62–63.)  The ALJ also reviewed Plaintiff's extensive medical records and concluded that her inflammatory arthritis, Sjogren's syndrome, Raynaud's syndrome, peripheral neuropathy, POTS, connective-tissue disease, osteoporosis, fractures, depression, complex regional pain syndrome, and obesity were generally well controlled with conservative treatment and did not result in worsening functional limitations during the relevant period.  (ECF No. 8-2, PAGEID: ## 63–64 (citing Exhibits 17F, 18F, 20F, 22F, 36F, 37F).)

While Plaintiff contends that a letter she wrote describing her workplace accommodations supports a more limited RFC, "[i]t is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff." *Lindsay N. C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-407, 2022 WL 621399, at *5 (S.D. Ohio Mar. 3, 2022).  "If the ALJ's credibility determinations are explained and enjoy substantial support in the

record, the Court is without authority to revisit those determinations." *Id.* Here, the ALJ explained that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the [Plaintiff]," and then further detailed how Plaintiff's medical records, daily activities, and inconsistent statements failed to support Plaintiff's subjective complaints. (ECF No. 8-2, PAGEID #: 71.) Review of the decision makes clear that the ALJ's credibility determination is based upon consideration of the entire record and supported by substantial evidence. Thus, the Undersigned finds that it is improper to disturb the ALJ's credibility determination. *See, e.g.*, *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).

Plaintiff does not otherwise challenge the ALJ's medical-improvement or RFC analysis, and the Undersigned finds no independent reason to question it. Accordingly, the Undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff was no longer disabled due to medical improvement.

## V.     CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VI.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

17